NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4647
_____

MARY SABLE;
MICHAEL LANZA,

Appellants

v.

JENNIFER VELEZ, Commissioner, New Jersey Department of Human Services;
JOHN GUHL, Director, New Jersey Department of Human Services,
Division of Medical Assistance and Health Services
_____

On Appeal from the United States District Court
for the District of New Jersey
(No.3-09-cv-02813)
District Judge: Hon. Anne E. Thompson

Submitted March 18, 2011

Before:  BARRY, CHAGARES and ROTH, Circuit Judges.

(Filed: July 12, 2011)
_____

OPINION
_____

CHAGARES, Circuit Judge.

Mary Sable and Michael Lanza (the "plaintiffs") appeal the District Court's denial

of a preliminary injunction enjoining their respective Medicaid agencies from considering

purchases of promissory notes from their children as trust-like devices in determining

their available resources for Medicaid eligibility. Applying the guidance provided by this Court, the District Court held that the plaintiffs had failed to show a likelihood of success on the merits. For the reasons that follow, we will affirm the judgment of the District Court.

I.

We write for the parties' benefit and recite only the facts essential to our disposition. Mary Sable is married to George Sable and the couple resides in their home in Manasquan, New Jersey. Mary suffers from severe rheumatoid arthritis and depends on others to perform her daily activities. On October 23, 2008, George purchased a promissory note for $80,903 from his son. The promissory note was payable for a period of seven years with interest of six percent. There was no security or collateral for the agreement and a determination of his son's creditworthiness was not made. On November 5, 2008, Mary applied for the Global Options Medicaid Waiver program, but was informed by his Medicaid agency that the couple had excess resources. On February 18, 2009, George purchased another promissory note from his son in the amount of $42,500 with an interest rate of three percent for seven years. Similar to the initial note, there was no security or collateral for this agreement and a determination of his son's creditworthiness was not made. On June 23, 2009, the agency denied Mary's application due to excess resources. In making this determination, the agency considered the promissory notes to be trust-like devices, requiring their inclusion in Mary's countable resources for Medicaid eligibility.

2

Michael Lanza is married to Grace Lanza and is a resident of a nursing facility. On February 16, 2009, Grace purchased promissory notes from each of her three children for $80,000, repayable with interest in monthly installments over four years. In this exchange, there was no security or collateral provided nor was documentation provided showing each child's creditworthiness. In March, Michael filed an application for Medicaid benefits with the Mercer County Board of Social Services seeking assistance for his long-term care bills. On June 2, 2009, the agency denied benefits to Michael because he exceeded the resource limit due to the promissory notes being considered as trust-like devices.

On June 9, 2009, the plaintiffs brought suit seeking injunctive relief preventing the agencies from counting promissory notes as trust-like devices in determining their available resources. On October 13, 2009, the District Court denied a motion for a preliminary injunction, finding that the plaintiffs did not make an adequate showing of success on the merits because a question existed as to whether a fiduciary relationship existed between the parents and children as borrowers and lenders. The plaintiffs filed a timely motion for reconsideration. On December 18, 2009, the District Court noted that the Supplemental Security Income ("SSI") provisions of the Social Security Act did not prohibit promissory notes from being counted as trust-like devices, and therefore, denied the motion for reconsideration.

The plaintiffs filed a timely appeal. On July 28, 2010, this Court concluded that the District Court committed legal error by not first determining whether the notes would be counted as resources under the regular resource eligibility rules before determining

3

whether such notes were trust-like devices. This Court did not rule on whether, under regular SSI resource-counting rules, these notes would be counted, but instead vacated the District Court's order and remanded the matter for further proceedings. On December 8, 2010, the District Court found that under regular SSI resource-counting rules, the notes did not qualify as cash loans or promissory notes because the plaintiffs had failed to meet their burden of showing that the notes were not the product of a bad-faith arrangement. Further, the District Court reaffirmed its earlier finding that the plaintiffs were unlikely to succeed on the merits because they had failed to show that the agencies acted improperly by counting the promissory notes as trust-like devices. Hence, the District Court again denied the motion for the preliminary injunction. This timely appeal followed.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 and we have appellate jurisdiction pursuant to 28 U.S.C. § 1292(a)(1). "A preliminary injunction is an extraordinary remedy that should only be granted if: (1) the plaintiff is likely to succeed on the merits; (2) denial will result in irreparable harm to the plaintiff; (3) granting the injunction will not result in irreparable harm to the defendant; and (4) granting the injunction is in the public interest." NutraSweet Co. v. Vit-Mar Enters., Inc., 176 F.3d 151, 153 (3d Cir. 1999). The burden is on the movant to demonstrate entitlement to a preliminary injunction by satisfying each of these factors. Id. In reviewing the District Court's denial of a motion for a preliminary injunction, we review the District Court's "conclusions of law in a plenary fashion, its findings of fact under a clearly erroneous

4

standard, and its decision to grant or deny the injunction for an abuse of discretion." New Jersey Hosp. Ass'n v. Waldman, 73 F.3d 509, 512 (3d Cir. 1995).

III.

In order to show a likelihood of success on the merits, the plaintiffs must establish that it was improper for the agencies to consider the notes as trust-like devices. We have instructed that the first step in that analysis is to determine whether the notes qualify under the regular SSI resource-counting rules as cash loans or promissory notes according to the Social Security Administration's Program Operations Manual System ("POMS"). See Sable v. Velez, 388 F. App'x 235 (3d Cir. 2010). If the notes do not qualify under either category, then the analysis proceeds to whether the notes are to be considered as trust-like devices pursuant to the POMS § 1120.201. Id.

A.

To qualify as a "cash loan" under the POMS, the instrument must be a "negotiable, bona fide loan agreement." § 1120.220(B)(2)(a). An informal loan may be bona fide if (1) it is enforceable under state law, (2) was in effect at the time the cash proceeds were provided, (3) there is an acknowledgment of an obligation to repay, (4) there is a plan for repayment, and (5) the repayment plan is feasible. Id. § 1120.220(C).

We conclude that the District Court did not err in citing a lack of evidence concerning the feasibility of the repayment plan – essential to concluding that an informal loan is bona fide – in which case it did not err in finding plaintiffs had not shown a likelihood of success on the merits. The plaintiffs argue that the POMS mandates that the District Court must presume that the agreement is a cash loan, citing §

5

1120.220(D)(3)(b), which provides: "Assume that the bona fide loan agreement is negotiable and is a resource, unless the lender raises questions about the negotiability of the agreement and wants to rebut this assumption." Such a presumption is only relevant, however, after a determination has been made that the agreement is in fact bona fide. The lack of evidence of feasibility of repayment is sufficient, in itself, to support a finding that plaintiffs' notes likely fail the POMS test for a bona fide loan agreement.

In addition to the § 1120.220 analysis, the District Court also assessed whether the instrument might constitute a bona fide agreement based on POMS § 1120.220(A)(3), which requires a bona fide agreement to be "made in good faith." In finding that that the transaction was not in good faith, the District Court considered that (1) the loans were not arms-length transactions, (2) the loans were informal between family members not in the business of lending money, (3) that some of the children had power of attorney over their parents, (4) the loans are not backed by collateral and there was no documentation about the borrowers' ability to repay the loans, (5) the timing of the loans made prior to the filing of the applications was suspicious, and (6) the loans were in the exact amount of excess resources preventing Medicaid eligibility. We agree with the District Court that based on these facts, the plaintiffs have not met their burden of showing a likelihood of success on the merits as to whether the instruments were bona fide agreements made in good faith – and, thus, cash loans – in accordance with POMS § 1120.220(A)(3).[1]

---

[1] Additionally, we do not agree with the plaintiffs that the District Court created its own "bad faith test." The District Court only analyzed the facts of this case to determine if the plaintiffs had met their burden of showing that the agreements were made in good faith.

## B.

Similarly, a "promissory note" must also be "bona fide" and "negotiable." POMS § 1140.300(D)(1) & (B)(3). To qualify as a "promissory note," the POMS instructs that the agency is to "[a]ssume, absent evidence to the contrary, that the written agreement is bona fide and negotiable." Id. § 1140.300(D)(1). We agree with the District Court that this assumption does not apply here as the facts presented provide "evidence to the contrary" – namely, that the notes may have been entered into with the purpose of attaining Medicaid eligibility, not to make loans. Hence, the District Court also properly determined that the plaintiffs had not met their burden for a preliminary injunction on the question of the promissory notes.

## C.

The POMS defines trust-like devices as instruments which involve (1) a grantor (2) who transfers property (3) to a person or entity with fiduciary obligations (4) with the intention that it be held, managed, or administered by the person or entity for the benefit of the grantor or others. Id. §§ 1120.201 (B)(5) & (G)(1). A fiduciary relationship can arise where "one or each of the parties, in entering the transaction, expressly reposes a trust and confidence in the other or because of the circumstances of the case, the nature of their dealings, or their position towards each other, such a trust and confidence is necessarily implied." United Jersey Bank v. Kensey, 704 A.2d 38, 44 (N.J. App. Div. 1997). In determining whether a fiduciary relationship exists, we must consider all the surrounding facts and circumstances relevant to the case. Clyde v. Hodge, 460 F.2d 532, 535 (3d Cir. 1972).

7

We conclude that the plaintiffs have not met the burden of showing that it was more likely than not that a fiduciary relationship did not exist between the parents and children. Considering that loans between parents and children generally are made in an environment of trust and confidence, the District Court properly found that the evidence presented did not demonstrate that the notes were created without any understanding that the children would simply hold the money for the benefit of the parents. Therefore, we agree with the District Court that the plaintiffs failed to show that the agencies erred by considering their notes as trust-like devices.

\* \* \* \* \*

We hold that the District Court's denial of the preliminary injunction was proper because the plaintiffs have failed to show that it was more likely than not that their notes would be considered cash loans or promissory notes under the regular SSI resource-counting rules or that their notes should not be considered trust-like devices.

IV.

For the foregoing reasons, we will affirm the judgment of the District Court.

8